**Patsy CHAPMAN, Appellant,**

v.

**Rachel K. ABBOT, Treva J. Burks, and Rebecca A. Sheehan, Appellees.**

No. 01–06–00940–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 18, 2007.

Rehearing Overruled Nov. 15, 2007.

Richard R. Burroughs, Law Office of Richard R. Burroughs, Cleveland, TX, for Appellant.

Kevin P. Riley, Godwin Pappas Langley Ronquillo LLP, Houston, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

JANE BLAND, Justice.

In a dispute over the proper recipient of life insurance proceeds from a policy purchased by her ex-husband, Patsy Chapman appeals a summary judgment in favor of his daughters, Rachel K. Abbot, Treva J. Burks, and Rebecca A. Sheehan. Chapman contends that the trial court erred in granting summary judgment in favor of the daughters because genuine issues of material fact exist as to the terms of a divorce decree and the validity of a power of attorney. We conclude that the trial court properly granted summary judgment and therefore affirm.

### Background

On January 16, 2002, Chapman and James Carrell Guyton executed an agreed divorce decree and divorced. The decree contains the following contractual provisions regarding alimony and insurance:

9.3 *AMOUNT*

[Guyton] will pay to [Chapman] $2,200.00, per month, in two payments of $1,100.00 each, as and for alimony. These payments will be payable monthly, on or before the 1st and 15th day of each month, beginning on February 1, 2002.

9.4 *TERM*

The payments will be payable until February 1, 2005, or [Chapman] dies, or [Chapman] remarries, whichever occurs first.

. . . .

9.6 *INSURANCE*

As long as alimony is payable under this article, [Guyton] will keep the life insurance at Oldline Life Insurance, Policy Number 5–2063321L in full force and effect, at [Guyton's] expense, in the face amount of $50,000.00 naming [Chapman] irrevocable beneficiary.

It is the intent of [Guyton] and [Chapman] that in the event of the death of [Guyton] during the term of the alimony contract that the entire sum of the life insurance proceeds of $50,000.00 shall be due and payable to [Chapman] in addition to those sums paid pursuant to the parties['] monthly contractual alimony package.

Throughout 2002, 2003, and 2004, Guyton timely paid alimony and maintained a $50,000 life insurance policy with Chapman named as the beneficiary, in accordance with the divorce decree. On December 13, 2004, Guyton gave Chapman an alimony check for $1,100, and wrote "Final Alimony" at the bottom of the check. The December 13 alimony payment was the seventy-second alimony payment Guyton made under the decree.

On December 30, 2004, Guyton executed a statutory durable power of attorney naming Sheehan as his attorney-in-fact. *See* TEX. PROB.CODE ANN. § 490 (Vernon 2003). On January 10, 2005, Sheehan used the power of attorney to change the beneficiary designation of the $50,000 life insurance policy. Sheehan named herself, Abbot, and Burks as the new beneficiaries of the policy. Guyton died of pneumonia the following day.

In August 2005, American General Life Insurance Company filed a petition in interpleader · against Chapman, Abbot, Burks, and Sheehan, seeking a judicial determination of the proper beneficiary of

the life insurance policy. *See* TEX.R. CIV. P. 43. The daughters moved for summary judgment, asserting that they were entitled to the proceeds of the insurance policy as a matter of law, or alternatively, that Chapman had produced no evidence that Guyton had breached the divorce decree by changing the beneficiary of the life insurance policy. In the motion, the daughters contend that the December 13 payment terminated Guyton's alimony obligation under the agreement incorporated in the divorce decree, as well as his obligation to maintain a life insurance policy in favor of Chapman. The trial court granted the summary judgment without specifying the grounds, ruling that the daughters were entitled to the proceeds of the life insurance policy.

## Summary Judgment

### A. Standard of Review

■ We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005); *Provident Life Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). Under the traditional standard for summary judgment, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant a judgment as a matter of law. TEX.R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and indulge every reasonable inference and resolve any doubts in the nonmovant's

favor. *Dorsett,* 164 S.W.3d at 661; *Knott,* 128 S.W.3d at 215; *Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997).[1]

### B. Contract Interpretation

■ "An agreed divorce decree is a contract subject to the usual rules of contract interpretation." *Broesche v. Jacobson,* 218 S.W.3d 267, 271 (Tex.App.-Houston [14th Dist.] 2007, pet. denied); *McKnight v. Trogdon–McKnight,* 132 S.W.3d 126, 131–32 (Tex.App.-Houston [14th Dist.] 2004, no pet.); *Harvey v. Harvey,* 905 S.W.2d 760, 764 (Tex.App.Austin 1995, no writ). Our primary concern when interpreting a contract is to ascertain and give effect to the intent of the parties as it is expressed in the contract. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.,* 207 S.W.3d 342, 345 (Tex.2006). To achieve this objective, courts should examine the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Dorsett,* 164 S.W.3d at 662.

■ Whether a contract is ambiguous is a question of law for the court. *Heritage Res., Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex.1996). If the contract is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and a court should construe the contract as a matter of law. *SAS Inst., Inc. v. Breitenfeld,* 167 S.W.3d 840, 841 (Tex.2005); *ACS Investors, Inc. v. McLaughlin,* 943 S.W.2d 426, 430 (Tex.1997). We construe an unambig-

---

1. We note that Chapman alternatively contends that we should reverse the judgment of the trial court and render a judgment in her favor if we determine that no genuine issues of material fact exist. Chapman, however, did not move for summary judgment at trial-she merely responded to Abbot, Burks, and Sheehan's motion for summary judgment. "Before an appellate court may reverse sum-

mary judgment for one party and render judgment for the other party, all parties must have sought final judgment relief in their cross-motions for summary judgment." *Montgomery v. Blue Cross Blue Shield of Tex., Inc.,* 923 S.W.2d 147, 152 (Tex.App.Austin 1996, writ denied); *Hitchcock v. Bd. of Trustees,* 232 S.W.3d 208, 213 (Tex.App.-Houston [1st Dist.] 2007, no pet.).

uous contract according to the plain meaning of its express wording. *Lyons v. Montgomery,* 701 S.W.2d 641, 643 (Tex. 1985). Unambiguous contracts are enforced as written. *Heritage Res., Inc.,* 939 S.W.2d at 121.

"A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation." *Id.* We determine whether a contract is ambiguous by looking at the contract as a whole in light of the circumstances present when the parties entered the contract. *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.,* 121 S.W.3d 742, 746 (Tex. 2003). If a contract is determined to be ambiguous, then a court may consider extraneous evidence to ascertain the true meaning of the instrument. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995).

An ambiguity in a contract may be either patent or latent. *Id.* A patent ambiguity is evident on the face of the contract. *Id.* A latent ambiguity arises when a contract that is unambiguous on its face is applied to the subject matter with which it deals and an ambiguity appears by reason of some collateral matter. *Id.* When a contract contains an ambiguity, either patent or latent, the interpretation of the instrument becomes a fact issue. *Coker v. Coker,* 650 S.W.2d 391, 394 (Tex. 1983); *Quality Infusion Care, Inc. v. Health Care Serv. Corp.,* 224 S.W.3d 369, 379 (Tex.App.Houston [1st Dist.] 2006, no pet.). The trier of fact must resolve the ambiguity by determining the true intent of the parties. *Coker,* 650 S.W.2d at 394–95.

### C. Early Payments

Chapman contends that the term of the alimony payments in the divorce decree was from February 1, 2002 until February 1, 2005, and Guyton could not extinguish his obligations under the contract by making an early alimony payment. The contract, however, expressly states that Guyton must make alimony payments "on or before the 1st and 15th day of each month." The plain meaning of the term "before" is "in advance" or "at an earlier time." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 110 (11th ed.2003). We therefore conclude that the phrase "on or before" permitted Guyton to satisfy his alimony obligation by making payments before they were due. *See, e.g., Kennedy Ship & Repair, L.P. v. Pham,* 210 S.W.3d 11, 22 (Tex.App.-Houston [14th Dist.] 2006, no pet.) (holding that term in contract was unambiguous and should be construed as matter of law). Additionally, the parties stated intent regarding the alimony payments is "the mutual desire ... to provide a continuing measure of support for [Chapman], after [the] divorce." Allowing Guyton to make alimony payments early is consistent with this intent, especially in light of the express language in the contract that allows payments to be made "on or before" their due date. *See Frost Nat'l Bank v. Matthews,* 713 S.W.2d 365, 368 (Tex.App.-Texarkana 1986, writ ref'd n.r.e.) (holding that "on or before" term in oil and gas lease allowed lessee to make shut-in royalty payments early).

Furthermore, the contract states that "[a]s long as alimony is payable under this article, [Guyton] will keep the life insurance at Oldline Life Insurance, Policy Number 5–2063321L in full force and effect, at [Guyton's] expense, in the face amount of $50,000.00 naming [Chapman] irrevocable beneficiary." The contract also states that "[i]t is the intent of [Guyton] and [Chapman] that in the event of the death of [Guyton] *during the term of the alimony contract* that the entire sum of the life insurance proceeds of $50,000.00 shall be due and payable to [Chapman] in

addition to those sums paid pursuant to the parties['] monthly contractual alimony package." (emphasis added). This language plainly allows Guyton to change the beneficiary of the life insurance policy after the completion of his alimony obligation. *See Breitenfeld,* 167 S.W.3d at 841; *McLaughlin,* 943 S.W.2d at 430. The phrase, "[a]s long as alimony is payable under this article," expressly conditions Guyton's obligation to maintain a life insurance policy in favor of Chapman upon the existence of an obligation to make alimony payments.

The life insurance policy also allows Guyton to change the beneficiary. The policy provides, "While the insured is alive, the owner may change the beneficiary or ownership by written notice to us. When we record the change, it will take effect as of the date the owner signed the notice, subject to any payment we make or other action we take before recording."

Considering the contract as a whole in light of the circumstances present when the parties entered it, we hold that the contractual terms surrounding the early payment of alimony, and Guyton's ability to change the beneficiary of the life insurance policy upon payment of the required alimony, are unambiguous. *See Breitenfeld,* 167 S.W.3d at 841; *Universal Health Servs., Inc.,* 121 S.W.3d at 746; *McLaughlin,* 943 S.W.2d at 430. The contract is worded in such a way that it can be given a certain or definite legal meaning or interpretation. *See Breitenfeld,* 167 S.W.3d at 841; *McLaughlin,* 943 S.W.2d at 430. We therefore construe the contractual terms as a matter of law and hold that Guyton had the ability to make an alimony payment before it was due, and to change the beneficiary designation of the life insurance policy after paying all of the required alimony. *See Breitenfeld,* 167 S.W.3d at 841; *McLaughlin,* 943 S.W.2d at

430; *Heritage Res., Inc.,* 939 S.W.2d at 121; *Lyons,* 701 S.W.2d at 643.

### D. Assignment

Chapman contends that the divorce decree contains an anti-assignment clause that prohibited Guyton from changing the beneficiary of the life insurance policy. Section 9.11 of the divorce decree states, "Neither the agreement to pay alimony nor the right to receive alimony under this article is assignable or transferable."

The life insurance policy and the proceeds thereof, however, are not alimony. The divorce decree expressly provides that "[Guyton] will pay [Chapman] $2,200.00, per month, in two payments of $1,100.00 each, as and for alimony." The contractual provisions regarding the life insurance policy do not refer to the policy or its proceeds as alimony. Rather, the contract separately refers to the life insurance policy and the alimony payments in the following excerpt from section 9.6:

> It is the intent of [Guyton] and [Chapman] that in the event of the death of [Guyton] during the term of the alimony contract that the entire sum of the life insurance proceeds of $50,000.00 shall be due and payable to [Chapman] in addition to those sums paid pursuant to the parties['] monthly contractual alimony package.

Because the contract is worded in such a way that it can be given a certain or definite legal meaning or interpretation, we hold that the contractual provision regarding the assignability of alimony payments is unambiguous and refers only to Guyton's bimonthly alimony payment of $1,100.00. *See Breitenfeld,* 167 S.W.3d at 841; *McLaughlin,* 943 S.W.2d at 430. We therefore hold that the contract did not prohibit Guyton from changing the beneficiary designation of his life insurance poli-

cy after he paid the required alimony. *See Breitenfeld,* 167 S.W.3d at 841; *McLaughlin,* 943 S.W.2d at 430; *Heritage Res., Inc.,* 939 S.W.2d at 121; *Lyons,* 701 S.W.2d at 643.

*E. Number of Payments*

■ Chapman further contends that the divorce decree required seventy-three alimony payments, not seventy-two. Thus, according to Chapman, Guyton breached their contract by changing the beneficiary designation of the life insurance policy before satisfying his alimony obligation. It is undisputed that Guyton made only seventy-two alimony payments under the contract.

With respect to the number of payments, section 9.3 of the divorce decree provides that "[Guyton] will pay to [Chapman] $2,200.00, per month, in two payments of $1,100.00 each, as and for alimony. These payments will be payable monthly, on or before the 1st and 15th day of each month, beginning on February 1, 2002." Section 9.4, which governs the term of the agreement further provides that "[t]he payments will be payable until February 1, 2005, or [Chapman] dies, or [Chapman] remarries, whichever occurs first." The central issue here is whether the divorce decree required Guyton to make an alimony payment on February 1, 2005. If the contract required a February 1, 2005 payment, then seventy-three total payments were due under the contract and Guyton's alimony obligation was not complete as of the date Sheehan changed the beneficiary designation. If no payment was due on February 1, then seventy-two total payments were due under the contract, and Guyton fulfilled his alimony obligation with the final payment made on December 13.

Standing alone, the provision requiring that alimony payments be made "until February 1, 2005" is reasonably suscepti-ble to more than one interpretation with regard to the total number of payments due under the contract. *See Heritage Res., Inc.,* 939 S.W.2d at 121. The contract is silent as to whether the parties intended the term "until" to be a term of inclusion or exclusion, and the contract does not specify the total number of alimony payments due, nor does it specify the total dollar amount that Guyton is to pay under the contract. *See id.* When the phrase "until February 1, 2005" is read in conjunction with the preceding provision, however, the contract unambiguously requires Guyton to make seventy-two alimony payments. The preceding provision expressly states that "[Guyton] will pay to [Chapman] $2,200.00, per month, in two payments of $1,100.00 each, as and for alimony. These payments will be payable monthly, on or before the 1st and 15th day of each month, beginning on February 1, 2002." This provision unambiguously requires Guyton to make two payments each month of $1,100. *See Breitenfeld,* 167 S.W.3d at 841; *McLaughlin,* 943 S.W.2d at 430. Construing the contract to require an additional alimony payment on February 1, 2005 would violate the provision requiring two monthly payments. *See Dorsett,* 164 S.W.3d at 662 (holding that courts should examine and consider the entire contract in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless). We therefore hold that the term "until" was intended to exclude February 1, 2005 as an alimony payment due date. *See Breitenfeld,* 167 S.W.3d at 841; *Dorsett,* 164 S.W.3d at 662; *McLaughlin,* 943 S.W.2d at 430. Accordingly, Guyton satisfied his obligations under the contract by making seventy-two alimony payments. *See Breitenfeld,* 167 S.W.3d at 841; *McLaughlin,* 943 S.W.2d at 430; *Heritage Res., Inc.,* 939 S.W.2d at 121; *Lyons,* 701 S.W.2d at 643.

### F. Newly Discovered Evidence

■ Finally, Chapman contends that the trial court erred in granting summary judgment in favor of Abbot, Burks, and Sheehan because genuine issues of material fact exist with regard to the validity of the power of attorney. After the trial court granted summary judgment, Chapman moved for a new trial, asserting that she had discovered new evidence that the general power of attorney designating Sheehan as Guyton's attorney-in-fact was a forgery. The trial court denied Chapman's motion for new trial. Chapman now asserts that the evidence suggesting that the power of attorney was forged creates a fact issue that should have precluded the summary judgment.

■ A party who seeks a new trial on the ground of newly discovered evidence must satisfy the court that (1) the evidence has come to his knowledge since the trial, (2) it was not owing to want of due diligence that the evidence did not come to his attention sooner, (3) the evidence is not cumulative, and (4) the evidence is so material that it would probably produce a different result if a new trial were granted. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex.1983), *overruled on other grounds; Summers v. WellTech, Inc.*, 935 S.W.2d 228, 233 (Tex.App.Houston [1st Dist.] 1996, no writ). We review the trial court's denial of a motion for new trial for an abuse of discretion. *Jackson*, 660 S.W.2d at 809.

In her motion for new trial, Chapman produced the affidavit of a handwriting examiner who testified that the power of attorney in favor of Sheehan was a forgery. The trial court denied the motion, stating that Chapman failed to exercise due diligence in obtaining the new evidence, and that Chapman should have anticipated the need for expert testimony. Chapman's motion for new trial does not explain why she could not have obtained the new evidence before the submission date of the motion for summary judgment. Chapman has therefore failed to demonstrate that it was not owing to want of due diligence that the evidence did not come to her attention sooner. *See Jackson*, 660 S.W.2d at 809; *Summers*, 935 S.W.2d at 233. We hold that the trial court did not abuse its discretion in denying Chapman's motion for new trial. *See Xenos Yuen v. Fisher*, 227 S.W.3d 193, 204–05 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (holding that trial court did not abuse its discretion in denying motion for new trial because appellant failed to demonstrate that it was not through want of diligence that he did not obtain new evidence sooner); *Mayhew v. Dealey*, 143 S.W.3d 356, 367 (Tex.App.Dallas 2004, pet. denied) (same); *GJR Mgmt. Holdings, L.P. v. Jack Raus, Ltd.*, 126 S.W.3d 257, 262 (Tex.App.-San Antonio 2003, pet. denied) (same).

### G. Conclusion

We hold that Abbot, Burks, and Sheehan established as a matter of law that Guyton discharged his obligation to pay alimony and did not breach the divorce decree by changing the beneficiary designation of the life insurance policy after satisfying his obligation. *See* Tex.R. Civ. P. 166a(c); *Knott*, 128 S.W.3d at 215–16. As the new beneficiaries of the policy, Abbot, Burks, and Sheehan were entitled to the proceeds of the policy upon Guyton's death. The trial court therefore properly granted summary judgment.

### Conclusion

We hold that the trial court properly granted summary judgment because the movants established that (1) the terms of the decree are unambiguous; (2) no issues of material fact exist; and (3) they are entitled to judgment under the terms of the decree and the life insurance policy.

We therefore affirm the judgment of the trial court.