NO. 07-08-0019-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

APRIL 30, 2009
_____

PERVIS J. BALLEW, JR.,

Appellant

v.

JUDE NDUDI,

Appellee
_____

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY;

NO. 2006-50304-367; HON. LEE GABRIEL, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Pervis J. Ballew, Jr. (Ballew) appeals from a take nothing summary judgment in favor of Jude Ndudi in a dispute involving restrictive covenants in the Shoal Creek subdivision of Plano, Texas. In four issues, Ballew argues 1) that the Shoal Creek Declaration of Covenants, Conditions and Restrictions (the Declaration) barring fences exceeding eight feet high mandates the removal of the gate installed by Ndudi, 2) the Shoal Creek Homeowners' Association Board of Directors does not have legal authority

to disregard the height restriction, 3) the Architectural Control Committee of the Homeowner's Association (the Committee) does not have the legal authority to grant variances that conflict with express provisions of the Declaration, and 4) the Committee should not have granted a variance because Ndudi's fence failed to blend effectively with the general architectural style and design of the subdivision or, at least, there was a fact issue as to same. We affirm the summary judgment.

*Background*

Ndudi built a home across the street from Ballew and constructed a fence and gate to which Ballew objected. Restrictive covenants regulate building in the neighborhood. The one in question states that no "fence, wall or hedge shall exceed eight (8) feet in height unless otherwise specifically required by the City of [Plano] and approved in writing by the Architectural Control Committee." While Ndudi's fence does not exceed the height restriction, the ornamental see-through gate he installed does by eight feet, as do the adjoining posts to which the gate is attached by four feet.

Prior to construction, Ndudi submitted his plans to the Committee, which approved them. Nonetheless, Ballew objected and sued to enforce the restrictive covenants. Because the use and enjoyment of his own property allegedly was affected by the construction, he sought injunctive relief. Both parties sought summary judgment, but the trial court granted that of Ndudi.

*Standard of Review*

The standard by which we review a summary judgment is well established and can be found in *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546 (Tex. 1985) to which we refer the parties. Next, when the trial court does not specify the grounds upon which

2

the summary judgment was based, the appellant must negate each ground upon which it could have been granted. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex. 1989). Finally, when both parties file motions and the trial court grants one but denies the other, we review all the evidence and render the decision the trial court should have rendered. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex. 1988).

*Applicable Law*

Ballew argues his four issues together; so, we will address them in the same way. And in doing so, we find it helpful to recall various rules of construction applicable to interpreting restrictive covenants. The first is that the general rules for contract construction apply to them. *Pilarcik v. Emmons,* 966 S.W.2d 474, 478 (Tex. 1998). Second, they must be liberally construed to effectuate their intent and purpose. TEX. PROP. CODE ANN. §202.003(a) (Vernon 2007). Third, such covenants are also construed as a whole and in a manner that gives effect to every sentence, clause, and word if possible. *City of San Antonio v. City of Boerne,* 111 S.W.3d 22, 29 (Tex. 2003). Fourth, the words used are to be accorded their generally accepted meanings. *Wilmoth v. Wilcox,* 734 S.W.2d 656, 657-58 (Tex. 1987). Fifth, the question of whether such a covenant has been breached involves a question of law when the writing is unambiguous. *Indian Beach Property Owners' Ass'n v. Linden,* 222 S.W.3d 682, 705 (Tex. App.–Houston [1st Dist.] 2007, no pet.).

*Application of Law*

Ballew initially asserts that per the plain language of art. 6.15(a) of the Declaration, a fence may be in excess of 8 feet in height *only* if approved by the Committee *and*

3

required by the City of Plano. We find the argument difficult to accept for several reasons.

First, nowhere does art. 6.15(a) contain the word "only." This is of import because we cannot include what the parties to the writing omitted. *Cross-Timbers Oil Co. v. Exxon Corp.,* 22 S.W.3d 24, 26 (Tex. App.–Amarillo 2000, no pet.).

Second, the allegation fails to take into consideration several other provisions within the document that also deal with variances. For instance, through art. 6.15(e), we are told:

> Upon submission of a written request for same, the Architectural Control Committee, from time to time and at its sole and exclusive discretion, *may permit the construction of fences or walls which are in variance with the provisions of this <u>Section</u>* where, in the sole and exclusive opinion of the Architectural Control Committee taking into account the view impact on the adjacent Lot or any other Lot directly affected thereby, the fence or wall is an integral part of the architectural style or design of the home.

(Emphasis added). Furthermore, art. 7.02 of the same document specifies that

> . . . The process of reviewing and approving Plans and specifications is one which of necessity requires that the Architectural Control Committee is called upon from time to time to make subjective judgments on items for which specific standards or guidelines are not expressly set forth in this Declaration. The Architectural Control Committee is given full power and authority to make any such subjective judgments and to interpret the intent and provisions of this Declaration in such manner and with such results as the Architectural Control Committee, in its sole and exclusive discretion, may deem appropriate, and in the absence of final adjudication by a court of competent jurisdiction that the Architectural Control Committee has abused its discretion, such action by the Architectural Control Committee shall be Final and conclusive. *Unless expressly stated otherwise herein*, *the Architectural Control Committee shall have the right to grant variances from the requirements of this Declaration as it*, *in its sole and exclusive judgment*, *deems appropriate.* The Architectural Control Committee shall have the sole and exclusive discretion to determine whether Plans submitted to it for approval are acceptable, . . . .

(Emphasis added). As can be seen, each of the foregoing provisions specifically states that variances from the fence restrictions may be granted. And, in so providing, those who

4

drafted them did not condition the exercise of that discretion upon the City of Plano also requiring that the fence exceed eight feet. Rather, the Committee was allowed to exercise its "sole and exclusive judgment" in deciding whether to vary from the limitation.

In effect, what we garner from the wording of art. 6.15(a), 6.15(e) and 7.02 is there are at least two situations in which the height restrictions may be ignored. One is when the City of Plano mandates it and the other is when the Committee authorizes it.[1] Interpreting the articles in that way allows them to co-exist harmoniously.

Next, we address the contention that Ndudi neither requested nor received a variance. It is based upon the excerpts from the deposition of the Committee's chairman. But, again, there is more to the situation than that mentioned by Ballew. Indeed, the chair explained his comment by interpreting the restrictions in a way that drew a distinction between the fence and the gate. Just as a door is not a wall, a gate is not a fence, he analogized. Given this and the authority of the Committee to interpret the Declarations in their "sole and exclusive" discretion (art. 7.02), we cannot say that construing the restriction in such a way is unreasonable or an abuse of discretion.

Ballew next claims that there existed a genuine issue of material fact as to whether the fence was "in basic conformity with, and blends effectively with, the general architectural style and design of the neighborhood." To create this purported fact issue, he refers the court to numerous pictures of houses without fences and to one picture of a house with a wrought iron fence standing less than three feet high. Yet, what particular

---

[1]Although Ballew argues that those variances are only intended to be permitted for items "for which specific standards or guidelines are not expressly set forth," there would be no need for variances in such situations for that very reason.

5

architectural style or design they purport to create goes unexplained. Nor does he cite us to any evidence describing the particular style or design those writing the Declarations had in mind. Indeed, all the homes shown us, including that of Ndudi, appear to be brick, multi-storied, gabled, angled or non-linear, heavily landscaped, and rather large. Given this, we cannot conclude that a fact issue exists regarding whether Ndudi's home deviates from any intended or community style or design.

Finally, Ballew's request that the award of attorney's fees be denied Ndudi *in toto* is premised on finding error in the trial court's decision to award Ndudi summary judgment. Finding no such error, we have no reason to disturb the award.[2] Nor do we find unreasonable the amount of fees awarded Ballew's neighbor. It may be that the reasonableness of attorney's fees is a fact question. *Mercier v. Southwestern Bell Yellow Pages, Inc.,* 214 S.W.3d 770, 775 (Tex. App.–Corpus Christi 2007, no pet.). Yet, the evidence tendered by Ballew to raise the supposed fact issue was not offered until he moved for new trial. Thus, it could not be considered as part of the summary judgment record. And, before we could consider it as new evidence somehow impacting upon the trial court's decision, Ballew would have had to show that it was unavailable prior to the summary judgment motions being submitted to the court. *See Chapman v. Abbot,* 251 S.W.3d 612, 620 (Tex. App.–Houston [1ˢᵗ Dist.] 2007, no pet.). That he did not do.

Accordingly, the summary judgment is affirmed.


Brian Quinn
Chief Justice

---

[2]The Declaration provides that the prevailing party in litigation to enforce the covenants and restriction shall be entitled to recover "reasonable attorneys' fees."