

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00007-CV

JAMES CHAFIN                                                    APPELLANT

V.

RICHARD G. ISBELL AND                                          APPELLEES
FAIRWAY INDEPENDENT
MORTGAGE CORPORATION

----------

### FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]
## ON REHEARING

----------

Appellees Richard G. Isbell and Fairway Independent Mortgage Corporation filed a motion for rehearing of our memorandum opinion issued December 2, 2010. To the extent Appellees argue that this appeal should be

---

[1]*See* Tex. R. App. P. 47.4.

remanded, we grant their motion for rehearing. We deny the remainder of the motion.[2]

On February 10, 2011, Appellant James Chafin filed a "Motion to Amend Judgment," which we construe as a motion for rehearing, and a motion to extend time to file the motion to amend judgment. We deny James's motion to extend time to file the motion to amend.

We withdraw our opinion and judgment dated December 2, 2010, and substitute the following.

## I. INTRODUCTION

The primary issue we address in this appeal concerns the construction of a divorce decree and whether, as a matter of law, it did or did not divest James of his interest in certain real property. In two issues, James argues that the trial court erred by granting summary judgment for Appellees and by denying his motion for summary judgment. We will reverse and render in part and remand in part.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The trial court signed an "Agreed Final Decree of Divorce" dissolving the marriage of James and Kristine Rynetta Chafin on July 20, 2004. In dividing the marital estate, the decree included a disposition of two residences owned by

---

[2]We grant Appellant James Chafin's motion to extend time for filing reply brief to Appellees' motion for rehearing.

2

James and Kristin: the "Jenkins property" and the "Osprey property." The decree stated the following in regard to the Jenkins property:

IT IS ORDERED AND DECREED that the husband, [James], is awarded the following as his sole and separate property, and the wife is divested of all right, title, interest, and claim in and to that property:

H-1. *The following real property, including but not limited to* any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security access and code, garage door opener, warranties and service contracts, and *title and closing documents*:

BEING LOT 62, IN BLOCK 209 OF THE COLONY NO. 24, AN ADDITION TO THE CITY OF THE COLONY, DENTON COUNTY, TEXAS ACCORDING TO THE MAP THEREOF RECORDED IN CABINET C, PAGE 200 OF THE MAP RECORDS OF DENTON COUNTY, TEXAS.

This award to the husband is subject to payment of the sum of $10,000.00 to [Kristine] upon the sale of the property located at 5916 Osprey Court, The Colony, Texas 75056 for her portion of equity in this real property, as set forth hereinbelow. [Emphasis added.]

The decree ordered James to pay "[t]he balance due . . . on the promissory note executed by [Kristine] and [James] and secured by Deed of Trust on the real property awarded in this Decree to [James]."

Concerning the Osprey property, the decree stated the following:

IT IS ORDERED AND DECREED that the wife, [Kristine], is awarded the following as her sole and separate property, *and the husband is divested of all right, title, interest, and claim in and to that property*:

W-1. *The use and benefit* of the following real property, *until it is sold* as set forth hereinbelow:

BEING LOT 1, BLOCK B, STEWART PENINSULA SOUTHSHORE PHASE 1, AN ADDITION TO THE

3

CITY OF THE COLONY, DENTON COUNTY, TEXAS
ACCORDING TO THE MAP THEREOF RECORDED IN
THE MAP RECORDS OF DENTON COUNTY, TEXAS
[Emphasis added.]

The decree ordered Kristine to pay "[t]he monthly payments (until the property is sold) on the promissory note executed by [Kristine] and [James] payable to Ameriquest Mortgage and secured by deed of trust on the real property located at 5916 Osprey Court, The Colony, Texas 75056."

In addition to dividing the Jenkins property and Osprey property, the decree included a section entitled "Provisions Dealing with Sale of Residence," which ordered the sale of the Osprey property pursuant to the following terms and conditions:

1. *The parties* shall list the property with a duly licensed real estate broker having sales experience in the area where the property is located . . . .

2. The property shall be sold for a price that is *mutually agreeable to [Kristine] and [James]*. If [Kristine] and [James] are unable *to agree* on a sales price, on the application of either party, the property shall be sold under terms and conditions determined by a court-appointed receiver.

3. [Kristine] shall continue to make all payments of principal, interest, taxes, and insurance on the property during the pendency of the sale, and [Kristine] shall have the exclusive right *to enjoy the use and possession of the premises* until closing. All maintenance and repairs necessary to keep the property in its present condition shall be paid one-half by [Kristine] and one-half by [James].

4. The net sales proceeds . . . shall be distributed as follows:

a. [Kristine's] one-half shall be distributed outright to [Kristine].

4

b.    [James's] one-half shall be distributed in the following order:

    i.    Payment to [Kristine] in the amount of $10,000.00 for her portion of equity in the [Jenkins property].[3]

    ii.    Remaining balance to [James]. [Emphasis added.]

According to James's original petition, William and Ramona Bauerly purportedly purchased the Osprey property from Kristine in March 2005. James alleged that "[a]lthough [he] was an owner of the [Osprey property] at the time of the sale, he was wrongfully excluded from the closing and his name is not on the deed to the Bauerlys." Appellees state that "[i]n connection with the sale of the Osprey Property to Bauerly, a copy of the agreed divorce decree was recorded in the Deed Records of Denton County, Texas as evidence that the title to the Osprey Property was vested in [Kristine]." In April 2007, Isbell purchased the property from the Bauerlys, and Fairway provided the mortgage financing.

In May 2009, James sued Appellees for a declaratory judgment and for a partition of the Osprey property. He alleged that the divorce decree did not divest him of his ownership interest and title to the Osprey property but, instead, merely awarded Kristine the use and benefit of the property until it was sold.

---

[3]The decree erroneously provided that Kristine was entitled to payment of $10,000 for her equity in the Osprey property instead of the Jenkins property. As pointed out by James, this was a drafting error because the portion of the decree awarding James the Jenkins property is expressly conditioned on his payment to Kristine of $10,000 upon the sale of the Osprey property for her equity in the Jenkins property and section 4(a) provides that one-half of the net sales proceeds are to be distributed to Kristine for her half share of the property.

5

James averred that he owned an undivided one-half interest in the Osprey property; that the Bauerlys could not have acquired a greater interest in the Osprey property than that owned by Kristine; that the Bauerlys did not acquire his one-half interest in the Osprey property; that neither Isbell nor Fairway subsequently acquired interests in the Osprey property as innocent purchasers without notice; and that Fairway's security interest in the Osprey property did not encumber his undivided one-half interest in the property.[4]

Appellees filed a motion for summary judgment on James's claims for declaratory relief and for a partition. They argued that there was no genuine fact issue that James did not have an interest in the Osprey property because the divorce decree divested him of all right, title, and interest in and to the property. James responded and filed a counter-motion for summary judgment, arguing that he was entitled to summary judgment on his declaratory relief and partition claims because the evidence established as a matter of law that the divorce decree did not divest him of his interest in the Osprey property and, therefore, that he remained the owner of an undivided one-half interest in the property. The trial court granted Appellees' motion and denied James's motion. This appeal followed.

### III. STANDARD OF REVIEW

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of

---

[4]James alleged in the alternative that the divorce decree was ambiguous.

material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review a summary judgment de novo, taking as true all evidence favorable to the nonmovant and indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Mann Frankfort*, 289 S.W.3d at 848; *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort*, 289 S.W.3d at 848. We must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005). When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Mann Frankfort*, 289 S.W.3d at 848. The reviewing court should render the judgment that the trial court should have rendered. *Id*.

## IV. DECLARATORY JUDGMENT

In his first issue, James argues that the trial court erred by granting Appellees summary judgment and by denying his motion for summary judgment

7

on his declaratory judgment claim because the decree did not, as a matter of law, operate to convey his interest in the Osprey property to Kristine but merely awarded her the "use and benefit" of the property until it was sold. James concedes that Kristine would have had the authority to sell the Osprey property without his participation had the decree divested him of his interest in the property, but he argues that because the decree, which is unambiguous, did not divest him of his interest, he remained—and continues to be—a joint owner of the property. According to James, because he owns an undivided one-half interest in the Osprey property, Isbell could not have mortgaged more than half of the property (the half interest that the Bauerlys purchased from Kristine and that Isbell purchased from the Bauerlys) and the lien asserted by Fairway is ineffective as to his one-half interest in the property.

Appellees agree that the sole issue on appeal is whether the divorce decree, which they also agree is unambiguous, divested James of title to the Osprey property. But unlike James, they argue that "the divorce decree[,] when read as a complete document, rather than isolating certain phrases, clearly divests [James] of any title interest in the Osprey Property." Appellees base this argument primarily on the provision in the decree that addresses the division of the Osprey property and provides that James is divested "of all right, title, interest, and claim in and to that property." In light of this language, they argue that "[t]he decree . . . clearly states that [James] is 'divested of all right, title, interest' to the property." Appellees also rely on the provisions in the decree

8

making Kristine responsible for the monthly payments and ad valorem taxes on the Osprey property and ordering James and Kristine to execute and exchange special warranty deeds.

An agreed divorce decree is interpreted according to the law of contracts. *Allen v. Allen*, 717 S.W.2d 311, 313 (Tex. 1986); *Chapman v. Abbot*, 251 S.W.3d 612, 616 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Soto v. Soto*, 936 S.W.2d 338, 341 (Tex. App.—El Paso 1996, no writ). Our primary concern when interpreting an agreement is to ascertain and give effect to the intent of the parties as it is expressed in the agreement. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Chapman*, 251 S.W.3d at 616. We examine the writing as a whole in an effort to harmonize and give effect to all the provisions so that none will be rendered meaningless. *Coker*, 650 S.W.2d at 393. If the agreement can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and the court will construe it as a matter of law. *Id.*; *Broesche v. Jacobson*, 218 S.W.3d 267, 271 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). If the agreement is capable of more than one reasonable interpretation, it is ambiguous. *Broesche*, 218 S.W.3d at 271.

We agree with James and Appellees that the divorce decree is unambiguous. We therefore construe the decree as a matter of law. *See Coker*, 650 S.W.2d at 393.

The divorce decree orders and decrees that Kristine "is awarded *the following* as her sole and separate property" and that James "is divested of all

9

right, title, interest, and claim in and to *that property*." [Emphasis added.] The italicized language, "the following" and "that property," is intended to refer to the items of marital property listed immediately thereafter of which Kristine is awarded as her separate property and James is divested of all right, title, interest, and claim in and to. In the absence of identifying some property that Kristine is awarded (and of which James is divested), the provision would have no meaning or effect whatsoever. *See Wilde v. Murchie*, 949 S.W.2d 331, 333 (Tex. 1997) (cautioning that courts should not give conclusive effect to a judgment's use or omission of commonly employed decretal words); *Tex. Workers' Comp. Ins. Fund v. Lopez*, 21 S.W.3d 358, 362 (Tex. App.—San Antonio 2000, pet. denied).

The first item of marital property that Kristine is awarded as her separate property and that James is divested of all right, title, interest, and claim in and to is the "use and benefit" of the Osprey property "until it is sold." Although the decree contains a legal description of the Osprey property, it clearly and unambiguously provides that Kristine is awarded as her separate property only the "use and benefit" of the property. This particular provision simply does not award Kristine full title to the property, including James's undivided one-half interest. Appellees' interpretation of the decree—that Kristine was awarded title to the Osprey property—unquestionably renders meaningless the decree's "use and benefit" language.

10

A divorce decree awarding a spouse the "use and benefit" of a residence is not unheard of or uncommon. In 1915, the Austin court of civil appeals considered whether a judgment awarding the wife the "use and benefit" of the homestead during her life divested the husband of his interest and title to the property. *Wade v. Wade*, 180 S.W. 643, 643 (Tex. Civ. App.—Austin 1915, no writ). The court concluded that granting the wife "the use of the homestead during her natural life is not, we think, equivalent to divesting [the husband] of his title thereto. It has been expressly held . . . that the court, in divorce cases, has the right to decree the use and benefit of the homestead to the wife during her lifetime." *Id.* at 644 (citations omitted). Other courts have reasoned similarly. *See Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 129 (Tex. 1991) (reasoning that divorce decree awarding wife the "use and occupancy of the residence" created in her rights analogous to those of a life tenant and in husband a future interest similar to that held by a vested remainderman); *Gilleland v. Meadows*, 329 S.W.2d 485, 488 (Tex. Civ. App.—Waco 1959, no writ) (stating that husband had an interest in property that was awarded to wife for the use and benefit of her minor children); *see also Bakken v. Bakken*, 503 S.W.2d 315, 317 (Tex. Civ. App.—Dallas 1973, no writ) (reasoning that evidence supported trial court's decree awarding wife residence for the use and benefit of her and the minor children and the first $7,500 of the net proceeds from the eventual sale of the residence).

11

Our construction is supported when we examine the decree as a whole, as we must. *See Coker*, 650 S.W.2d at 393. The portion of the decree awarding property to James contains the same decretal language preceding the identification of property as that found in the part of the decree awarding Kristine property. It states that James "is awarded the following as his sole and separate property" and that Kristine "is divested of all right, title, interest, and claim in and to that property." However, unlike the decree's award to Kristine of the "use and benefit" of the Osprey property "until it is sold," the decree here provides that James is awarded "[t]he following real property," including the title and closing documents. There is no dispute that this contrasting language awarded James the Jenkins property.

Further, the portion of the decree setting out the terms and conditions of the sale of the Osprey property supports our construction. The decree provides that "[t]he parties" shall list the property, that the property shall be sold for a price that is "mutually agreeable" to Kristine and James, and that Kristine shall have the exclusive right to enjoy the "use and possession" of the premises until closing. The decree essentially reaffirms that Kristine is merely awarded the use of the Osprey property instead of title, and it makes little sense, if any, to order Kristine and James to jointly list the property and to mutually agree on a selling price if the decree awarded Kristine title to the property.

Contrary to Appellees' argument, the decree's award to Kristine of only the "use and benefit" of the Osprey property does not conflict with its ordering her to

12

make payments on the property and to pay the ad valorem taxes until the property is sold. And we cannot conclude that the portion of the decree ordering that James and Kristine exchange special warranty deeds in the forms attached to the decree conflicts with our construction; there are no special warranty deeds attached to the decree, and thus there are no special warranty deeds that are a part of the summary judgment record.

A case with strikingly similar facts and issues to this case is *Starkey v. Holoye*, 536 S.W.2d 438, 439–40 (Tex. Civ. App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.). In that case, Starkey and Safford's divorce decree awarded marital property to Safford and the minor children "for their use and benefit as their home, until the youngest of said children shall have reached the age of eighteen (18) years." *Id.* at 440. After the divorce, Safford remarried, and he and his wife later purported to convey the *entire* property to the Holoyes by a general warranty deed, which was subject to a vendor's lien assigned to United Mortgage Company of Texas. *Id.* Starkey sued Holoye and United Mortgage Company for title to an undivided one-half interest in the property, for partition of the property or the proceeds from the sale thereof, and, among other things, to have liens on the property declared to be of no force and effect as against her interest in the property. *Id.* at 439. The Holoyes filed a cross-action against Safford, and the trial court ultimately denied Starkey's motion for summary judgment. *Id.* On appeal, in addition to determining that the divorce decree awarded Safford a right

13

to reimbursement for payments he made on the property after the divorce, the court of civil appeals reasoned as follows:

> Since the property was not partitioned at the time of the divorce, [Safford] and [Starkey] became tenants in common or joint owners thereof, each owning an undivided one-half interest. With a deed on record showing the owners of the property to be [Safford and Starkey], the Holoyes could not have purchased from [Safford and his wife] any greater interest in the property than was owned by [Safford]: an undivided one-half interest. Upon their purchase of [Safford's] interest, the Holoyes became tenants in common with [Starkey]. [Starkey] presently owns an undivided one-half interest, subject to a claim by [Safford] for reimbursement for any payments made on the property after [the date of the divorce]. Since she is still a joint owner of the property, and absent any agreement not to partition, [Starkey's] right to partition is absolute under [the property code].
>
> Further, the Holoyes could not mortgage more of the property than they owned. Therefore, they could not mortgage [Starkey's] interest, and the lien asserted by United Mortgage Company is ineffective as to [Starkey's] one-half interest.

*Id.* at 441 (citations omitted). *Starkey* is instructive on James's claims for declaratory judgment and for partition.

We have examined the divorce decree as a whole toward the end of harmonizing and giving effect to all that is written. *See Wilde*, 949 S.W.2d at 333. We hold that the trial court erred by granting Appellees' motion for summary judgment on James's declaratory judgment claims and by denying James's motion for summary judgment on that claim. The divorce decree did not, as a matter of law, convey James's interest in the Osprey property to Kristine, thus divesting him of title to the property; rather, the decree awarded Kristine only the "use and benefit" of the Osprey property until it was sold.

14

Because the divorce decree did not convey James's interest in the Osprey property to Kristine, James and Kristine became tenants in common, Kristine could not have transferred James's interest in the Osprey property, Isbell could not have acquired James's interest in the property when he purportedly purchased the property from the Bauerlys, and Fairway's security interest could not have encumbered James's interest. *See Starkey*, 536 S.W.2d at 441. Accordingly, we sustain James's first issue.

## V. PARTITION

In his second issue, James argues that he has an absolute right as a joint owner to a partition of the property.[5] A joint owner or claimant of real property or an interest in real property may compel a partition of the interest or the property among the joint owners or claimants. Tex. Prop. Code Ann. § 23.001 (Vernon 2000). The right to partition has been characterized as "absolute." *Grant v. Clouser*, 287 S.W.3d 914, 919 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The rules of civil procedure set out a multi-step process for partition of real estate. *See* Tex. R. Civ. P. 756–71; *Long v. Spencer*, 137 S.W.3d 923, 925–26 (Tex. App.—Dallas 2004, no pet.); *Positive Feed, Inc. v. Wendt*, Nos. 01-96-00614-CV, 01-96-01250-CV, 1998 WL 43321, at *4 (Tex. App.—Houston [1st Dist.] Feb. 5, 1998, pet. denied) (op. on reh'g).

---

[5]There is no evidence that James waived his right to partition the property.

15

In light of our holding above and the extent of the record, it appears that the only part of the partition process that has occurred is the determination of the parties' shares or interest in the Osprey property. The trial court, not this appellate court, is the appropriate venue to address the remaining, unresolved aspects of James's claim for partition, whatever they may be. *See* Tex. R. Civ. P. 760–71.

## VI. CONCLUSION

Having sustained James's first issue, we reverse the trial court's judgment and render judgment in favor of James on his claims for declaratory relief. We remand James's claim for partition to the trial court for further proceedings consistent with this memorandum opinion.

BILL MEIER
JUSTICE

PANEL: LIVINGSTON, C.J.; MCCOY and MEIER, JJ.

DELIVERED: March 17, 2011