Opinion issued April 18, 2013



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00784-CV

———————————

**JUDITH LYNN SMITH F/K/A JUDITH LYNN GOODRUM, Appellant**

**V.**

**DAVID EUGENE GOODRUM, SR., Appellee**

---

**On Appeal from the 312th District Court**
**Harris County, Texas**
**Trial Court Case No. 1992-46409**

---

## MEMORANDUM OPINION

The trial court denied a motion to confirm child-support arrearage. Judith Lynn Smith appealed. In five issues, Judith argues the trial court erred by denying the motion because (1) it misconstrued the child-support provision of the divorce

decree, (2) David Eugene Goodrum, Sr. is judicially estopped from arguing his child-support obligations ended before his youngest child turned 18, and (3) she was entitled to attorneys' fees in seeking the confirmation of arrearage.

We affirm.

## Background

Judith and David were divorced in 1993 with two children from the marriage. The divorce decree was rendered by agreement of the parties. The divorce decree required David to make child-support payments twice a month

> until the date of the earliest occurrence of one of the following events:
>
> a. any child reaches the age of eighteen years, provided that, if the child is fully enrolled in an accredited primary or secondary school in a program leading toward a high school diploma, the periodic child-support payments shall continue to be due and paid until the end of the school year in which the child graduates;
>
> b. any child marries;
>
> c. any child dies;
>
> d. any child's disabilities are otherwise removed for general purposes;
>
> e. any child is otherwise emancipated; or
>
> f. further order modifying this child support.

The record establishes that the older child turned 18 in 2003. The younger child turned 18 in 2008. There is no indication in the record of when either child graduated high school.

2

In 1995, the trial court determined that David was in arrears on his child-support payment. By agreement of the parties, the court ordered David to make certain payments on the arrearage. The payments were in addition to his regular child-support payments and did not otherwise modify his obligations to pay child support under the divorce decree.

In April 2004, the trial court again determined that David was in arrears. The order states that David did not appear in person or through counsel and that the order was entered as a default order. The last page of the order shows that someone signed David's name in a space provided. The order does not state any legal effect of the signature. The order obligated David to pay $2,520.98 in arrears at $25 per month until the arrearage was paid in full or until "the termination of current support for any child the subject of this suit." After that, the order obligated David to pay $250 per month until the arrearage was paid in full or until "the termination of current child support for any child the subject of this suit." Finally, the order required David, if he had not "paid the judgment in full by the date his current child support obligation ends," to pay the remainder of the arrearage in monthly installments of $475.

The record reflects that David did not make regular payments. Instead, from April 2004 to June 2008, David made payments at various times and at various amounts, though most payments were in the amount of $450, $900, or $950. On

3

July 29, 2010, the Attorney General's Child Support Division filed another motion to confirm child-support arrearage as well as to suspend David's driver's license. The Attorney General asked the court to render an order declaring a total arrearage of $11,458.25.

David answered the motion, arguing that his obligation to pay child support terminated in 2003 and, accordingly, no arrearage existed. Following a hearing in May 2011, the trial court agreed with David and denied the motion. On June 30, 2011, the trial court filed findings of fact and conclusions of law. Judith requested further findings, but the trial court did not file any further findings.

## Construction of the Child-Support Provision

In her first issue, Judith argues the trial court erred in its construction of the child-support provision in the original divorce decree. In her second issue, Judith argues the trial court's construction of the child-support provision is contrary to public policy. In her third issue, Judith argues the trial court's construction of the child-support provision is contrary to the parties' intent.

## A. Standard of Review & Applicable Law

Agreed judgments, such as divorce decrees, are interpreted in accordance with contract law. *McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex. 1984). We review whether a divorce decree is ambiguous as a question of law. *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003). If the words used in the written

4

instrument can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Chapman v. Abbot*, 251 S.W.3d 612, 616 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Courts must enforce an unambiguous contract as written and may not consider extrinsic evidence for the purpose of creating an ambiguity or giving the contract a meaning different from that which its language imports. *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008).

**B.  Analysis**

The divorce decree required David to make child-support payments twice a month

> until the date of the earliest occurrence of one of the following events:
>
> a.  any child reaches the age of eighteen years, provided that, if the child is fully enrolled in an accredited primary or secondary school in a program leading toward a high school diploma, the periodic child-support payments shall continue to be due and paid until the end of the school year in which the child graduates;
>
> b.  any child marries;
>
> c.  any child dies;
>
> d.  any child's disabilities are otherwise removed for general purposes;
>
> e.  any child is otherwise emancipated; or
>
> f.  further order modifying this child support.

5

The record establishes that the older child turned 18 in 2003. The younger child turned 18 in 2008. There is no indication in the record of when either child graduated high school.

Judith claims that the use of the term "any child" in the quoted language creates an ambiguity. Judith does not make any argument showing an ambiguity in the divorce decree, however. Instead, she argues that the only reasonable interpretation of the decree required interpreting "any child" to mean "the youngest child." In support of this argument, Judith asserts that the trial court's interpretation of "any child" is unreasonable and that her interpretation is more in-line with public policy.

Judith argues that the trial court's interpretation of "any child" is unreasonable because, "utilizing David's literalness argument to its full extent," "any child" could mean any child anywhere. We agree with Judith that this proposed interpretation is unreasonable. But it is not an interpretation that any party is advocating, and it is not the only available interpretation.

We interpret the divorce decree in accordance with contract law. *McGoodwin*, 671 S.W.2d at 882. In interpreting a contract, "our primary concern is to ascertain the true intent of the parties as expressed within the four corners of the severance agreements." *Creel v. Hous. Indus., Inc.*, 124 S.W.3d 742, 749 (Tex. App.—Houston [1st Dist.] 2003, no pet.). The contract only identifies two

6

children.  The provision of child support only concerns the support of two children.  Because the decree does not concern any other children, it would be unreasonable to look beyond the age of the children identified in the divorce decree to determine when the obligation to pay child support terminated.

"If a contract term is not defined, it will be given its plain, ordinary, and generally accepted meaning." *Id.*  The decree does not define the term "any child."  "Any" is "used to refer to one or some of a thing or number of things, no matter how much or many."  THE NEW OXFORD AMERICAN DICTIONARY 70 (2d ed. 2005).  Accordingly, we interpret "any child," as used in this divorce decree, to mean "one or more of the two children identified in the divorce decree."  One of David and Judith's children turned 18 in 2003.  Accordingly, David's obligation to pay child support terminated in 2003, when his older child turned 18.

Judith's argument is unreasonable because it asks this court to assign a meaning to "any" that is completely different from any commonly accepted meaning.  Judith asks this Court to interpret "any child" to mean "only the last child."  Judith argues that this interpretation is more in-line with the public policy concern that judgments affecting the parent-child relationship reflect the best interest of the child.  Judith does not cite, however, any law providing that public policy concerns can create an ambiguity in an otherwise unambiguous contract, and we find none.  *Cf. Woolaver v. Texaco, Inc.*, 594 S.W.2d 224, 225 (Tex. Civ.

7

App.—Fort Worth 1980, no writ) (holding rule of construction based on public policy applies only to ambiguous deeds; it is not used to determine if ambiguity exists).

Similarly, Judith asks this Court to reverse on public policy grounds even if we affirm the trial court's interpretation of the divorce decree. In essence, Judith's argument is a collateral attack on the divorce decree. "A collateral attack is an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against." *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005). Only a void judgment may be collaterally attacked. *Id.* "A judgment is void only when it is apparent that the court rendering judgment 'had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act." *Id.* (quoting *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985)).

There is no dispute that a trial court can decline to render judgment on an agreement between the parties that the trial court determines to not be in the best interest of the child. *See, e.g.*, TEX. FAM. CODE ANN. § 154.124(b) (Vernon 2008) ("If the court finds that [an agreement concerning child support] is in the child's best interest, the court shall render an order in accordance with the agreement"). In

8

contrast, we find no authority for the proposition that a judgment not in the best interest of the child deprives the trial court of jurisdiction or capacity to render the judgment.[1]

Furthermore, Judith does not explain how setting aside the original divorce decree would enable her to obtain child-support payments that would have been owed between 2003 and 2008. *See* TEX. FAM. CODE ANN. § 156.401(b) (Vernon Supp. 2012) ("A support order may be modified with regard to the amount of support ordered only as to obligations accruing after the earlier of (1) the date of service of citation; or (2) an appearance in the suit to modify."); *In re H.J.W.*, 302 S.W.3d 511, 514 (Tex. App.—Dallas 2009, no pet.) (recognizing "the family code generally prohibits the retroactive modification of child support").

Finally, Judith argues that the trial court's interpretation of the contract is contrary to the parties' original intent. As we have held, we ascertain intent from the four corners of the document. *Creel*, 124 S.W.3d at 749. Parol evidence may not be introduced to create an ambiguity or to alter the intent of the parties as expressed in the instrument. *David J. Sacks*, 266 S.W.3d at 450.

We overrule Judith's first, second, and third issues.

---

[1] To the degree that Judith is arguing a judgment not in the best interest of the child is voidable, such a claim would have to be raised on direct appeal. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010).

## Judicial Estoppel

In her fourth issue, Judith argues that David is judicially estopped from terminating child-support payments before the younger child turned 18 because he took a conflicting position in a judicial proceeding.

### A. Standard of Review

In an appeal from a bench trial, findings of fact have the same weight as a jury's verdict on special issues. *Lee v. Lee*, 981 S.W.2d 903, 905 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). We review the legal and factual sufficiency of the evidence supporting a trial court's findings of fact by the same standards that we apply to reviewing the legal or factual sufficiency of the evidence supporting jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

When she attacks the legal sufficiency of an adverse finding on an issue on which she had the burden of proof at trial, a party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989)). In reviewing a "matter of law" challenge, we must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Id.* If there is no evidence supporting the finding, we will then examine the entire record to determine if the contrary position is established as a matter of law. *Id.* We will sustain this

challenge only if the contrary proposition is conclusively established. *Id.* (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983)).

In our review of factual sufficiency of the evidence, we must consider and weigh all of the evidence. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). We will set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*

**B.    Analysis**

The elements of equitable estoppel based on a party taking inconsistent positions in judicial proceedings are

> (1) a party takes clearly inconsistent positions in the same or separate proceedings; (2) the position first asserted was successfully maintained or upheld; (3) the other party relied on the position first asserted; (4) adoption of the later position would result in injury or prejudice to the adverse party; and (5) where more than one action is involved, there is an identity of parties.

*Glattly v. Air Starter Components, Inc.*, 332 S.W.3d 620, 639 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (citing *In re Estate of Loveless,* 64 S.W.3d 564, 577–78 (Tex. App.—Texarkana 2001, no pet.)). Judith argues that estoppel applies because David "took an inconsistent position by agreeing to" the April 2004 order of arrearage. We hold that there is insufficient evidence to establish that David agreed to the April 2004 order.

11

The order expressly states that David did not appear in person or through counsel and that the order was entered as a default order. The last page of the order shows that someone signed David's name in a space provided. The order does not state that the parties' signatures would constitute an agreement as to form, as to substance, or as to substance and form. Nor does it in any other way state any legal effect of the signature.[2] Accordingly, Judith has failed to establish, as a matter of law or by the great weight and preponderance of the evidence, that David agreed to the order. We do not need to consider, then, what effect agreeing to the 2004 order would have had.

In making her estoppel argument, Judith relies on *In re T.G.*, No. 03-02-00090-CV, 2002 WL 31769031 (Tex. App.—Austin Dec. 12, 2002, no pet.) (not designated for publication). That case concerns nearly identical language for child-support payments in a divorce decree. *Id.* at *1. The older child graduated high school in May 2001. *Id.* The father missed payments, and the trial court entered an order in 1994 requiring him to make set monthly payments until February 2004, with a portion of those payments assigned to arrears and the remainder assigned to child-support obligations. *Id.* Another proceeding was commenced to confirm arrearages in 2001. The trial court confirmed the arrearages, and the father appealed. *Id.*

---

[2] David testified at the hearing, but was never asked about any involvement he may have had with the 2004 order.

12

On appeal, the father argued that the 1994 arrearage order—upon which the 2001 order relied—was improper because his obligation to pay child support terminated in 2001, pursuant to the divorce decree. *Id.* at *5. The Austin Court of Appeals noted that the father did not appeal the 1994 order. *Id.* Accordingly, it was final and enforceable. *Id.* "The child-support debt confirmed is supported by the obligations imposed by the 1994 orders, regardless of any deficiencies in the [divorce] decree." *Id.* at *6. As a result, the court held that the 2004 order was enforceable. *Id.*

Assuming without deciding that the same logic applies to the 2004 order in this case, it is undisputed that, at the time of the 2011 hearing, David had paid all of the money in arrears. It is also undisputed that neither of the arrearage orders modified the child-support obligations in the divorce decree. Instead, they both imposed independent obligations to pay arrearage in addition to the existing child-support obligation. Accordingly, the orders have no bearing on whether David had an obligation to pay child support after 2003, the year the older child turned 18.

Judith also argues that, by continuing to make payments after his child-support obligation ended, David was judicially estopped from denying any further obligation. Judith provides no authority for the proposition that making child-support payments that were not court ordered constitutes taking a position in a

judicial proceeding, and we find none. Nor is there any support for the proposition that, by making the payments, his "position" was maintained or upheld.

We hold there is no evidence to establish as a matter of law that David is judicially estopped from arguing his child-support obligations terminated in 2003. We further hold that the trial court's determination that the child-support obligation terminated in 2003 is not against the great weight and preponderance of the evidence. We overrule Judith's fourth issue.[3]

## Conclusion

We affirm the trial court's denial of the motion to confirm child-support arrearage.

Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

---

[3] Judith's fifth issue, concerning attorneys' fees, is contingent on our sustaining one or more of her other issues. Because we have not sustained those issues, we do not reach the fifth issue. *See* TEX. R. APP. P. 47.1.