**UNION PACIFIC RAILROAD CO., Appellant,**

v.

**NOVUS INTERNATIONAL, INC., Appellee.**

No. 01–02–00102–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 15, 2003.

Rehearing Overruled July 11, 2003.

Frederick M Knapp, Taylor M. Hicks, Stephen McBride Loftin, Hicks, Thomas & Lilienstern, L.L.P., Houston, James W. Bradford Jr., Angleton, Robert A. Long, Keith A. Noreika, Covington & Burling, Washington, D.C., for Appellant.

John R. Gilbert, Gilbert & Moore, Angleton, Kenneth Breitbeil, McFall, Sherwood & Breitbeil, P.C., Houston, Amy J. Thompson, Rebecca R. Jackson, Bryan-Cave, L.L.P., St. Louis, MO, for Appellee.

Panel consists of Justices HEDGES, JENNINGS, and ELSA ALCALA.

## OPINION

ELSA ALCALA, Justice.

This appeal concerns the right of appellee, Novus International, Inc. (Novus), to sue as a third-party beneficiary of a rail contract entered into between appellant, Union Pacific Railroad Co. (Union Pacific), and Union Carbide Co. (Carbide). The trial court granted Novus's cross-motion for partial summary judgment, which sought third-party-beneficiary status under the rail contract, and the jury awarded Novus $2,500,000 in contract damages and $900,000 in attorney's fees.

In three issues, Union Pacific challenges the trial court's ruling that Novus was a third-party beneficiary of the rail contract, the trial court's refusal to submit a jury instruction on special damages, and the jury's award of attorney's fees. Because we hold that Novus was not a third-party beneficiary of the rail contract, we reverse the judgment of the trial court and render judgment that Novus take nothing.

## Background

Novus manufactures a poultry-feed supplement named "Alimet" at its manufacturing plant in Chocolate Bayou, Texas. A key component of Alimet is methylmercaptopropanol (MMP). In July of 1995, Novus contracted with Carbide to secure MMP for Alimet production. Carbide agreed to manufacture MMP at its facility in Taft, Louisiana and to ship the MMP by rail to the Novus plant in Chocolate Bayou.

In July of 1996, Carbide entered into a rail-transportation contract with Union Pacific. Union Pacific agreed to ship hundreds of products to and from Carbide's manufacturing facilities located in Texas and Louisiana. Among the products to be shipped was the MMP produced at Carbide's Taft facility.

Due to difficulties that arose from its merger with Southern Pacific, Union Pacific experienced severe disruptions in its rail services in 1997 and 1998. Consequently, Union Pacific was unable to transport sufficient amounts of MMP from Taft to Chocolate Bayou. The reduced supply of MMP forced Novus to suffer a significant reduction in its Alimet production and inventory. Novus had to transport smaller amounts of Alimet by faster and more expensive methods (referred to as "premium freight") to satisfy customer demand.

Thereafter, Novus brought suit against Union Pacific to recover the increased costs of premium freight that resulted

from Union Pacific's breach of the rail contract. Union Pacific filed a motion for summary judgment, contending that Novus was not a third-party beneficiary of the rail contract between Union Pacific and Carbide and did not have standing to sue. Novus countered with a cross-motion for partial summary judgment, seeking third-party-beneficiary status under the rail contract. The trial court granted Novus's motion, and the case proceeded to trial, at which point the jury found in favor of Novus and awarded damages.

### Third–Party Claim

■ In its first issue, which disposes of this appeal, Union Pacific contends that the trial court erred in granting Novus's motion for partial summary judgment and in denying Union Pacific's motion for summary judgment because Novus was not a third-party beneficiary of the rail contract. When reviewing cross-motions for summary judgment, we consider both motions and render the judgment that the trial court should have entered. *Coastal Liquids Transp., L.P. v. Harris County Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex. 2001). Our analysis requires us to interpret the rail contract between Union Pacific and Carbide to determine if Novus was an intended third-party beneficiary. *See MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650 (Tex.1999).

### 1. Standard of Review

■ It is well-settled that third-party-beneficiary claims succeed or fail according to the provisions of the contract upon which suit is brought. *Greenville Ind. Sch. Dist. v. B & J Excavating, Inc.*, 694 S.W.2d 410, 412 (Tex.App.-Dallas 1985, writ ref'd n.r.e.); *Carnes Corp. v. Thermal Supply, Inc.*, 359 S.W.2d 99, 100 (Tex.Civ. App.-Houston 1962, no writ). The construction of the written instrument is a question of law for the trial court. *MCI Telecomms.*, 995 S.W.2d at 650. We review a trial court's legal conclusions *de novo. Id.* at 651.

■ The fact that a person might receive an incidental benefit from a contract to which he is not a party does not give that person a right of action to enforce the contract. *Id.; Young Ref. Corp. v. Pennzoil Co.*, 46 S.W.3d 380, 387 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). A third party may recover on a contract only if the contracting parties intended to secure some benefit to that third party and only if the contracting parties entered into the contract directly for the third party's benefit. *MCI Telecomms.*, 995 S.W.2d at 651; *Young Ref.*, 46 S.W.3d at 387. To qualify as one for whose benefit the contract was made, the third party must show that he is either a donee or creditor beneficiary of the contract and not one who is benefitted only incidentally by the contract's performance. *MCI Telecomms.*, 995 S.W.2d at 651; *Young Ref.*, 46 S.W.3d at 387. One is a donee beneficiary if the performance promised will, when rendered, come to him as a pure donation. *MCI Telecomms.*, 995 S.W.2d at 651; *Young Ref.*, 46 S.W.3d at 387. If, on the other hand, that performance will come to him in satisfaction of a legal duty owed to him by the promisee, he is a creditor beneficiary. *MCI Telecomms.*, 995 S.W.2d at 651; *Young Ref.*, 46 S.W.3d at 387.

■ In determining whether a third party may enforce a contract, courts look only to the intent of the contracting parties. *MCI Telecomms.*, 995 S.W.2d at 651; *Whitten v. Vehicle Removal Corp.*, 56 S.W.3d 293, 311 (Tex.App.-Dallas 2001, pet. denied). We glean intent from what the parties said in their contract, not what they allegedly meant. *Esquivel v. Murray Guard, Inc.*, 992 S.W.2d 536, 544 (Tex. App.-Houston [14th Dist.] 1999, no pet.).

We may not create a third-party-beneficiary contract by implication. *MCI Telecomms.*, 995 S.W.2d at 651; *Whitten*, 56 S.W.3d at 311. The intention to confer a direct benefit on a third party must be clearly and fully spelled out in the four corners of the contract; otherwise, enforcement of the contract by a third party must be denied. *MCI Telecomms.*, 995 S.W.2d at 651; *Whitten*, 56 S.W.3d at 311. Thus, a presumption exists that parties contract for themselves unless it "clearly appears" that they intend a third party to benefit from the contract. *MCI Telecomms.*, 995 S.W.2d at 651; *Whitten*, 56 S.W.3d at 311. Because of this presumption, third-party-beneficiary claims will generally be denied unless: (1) the obligation of the bargain-giver is fully spelled out, (2) it is unmistakable that a benefit to the third party was within the contemplation of the primary contracting parties, and (3) the primary parties contemplated that the third party would be vested with the right to sue for enforcement of the contract. *Whitten*, 56 S.W.3d at 311.

## 2. The Rail Contract Between Union Pacific and Carbide

The rail contract between Union Pacific and Carbide, including attached exhibits, consists of nearly 100 pages. Exhibit 2 of the contract delineates inbound and outbound shipments to and from Carbide's Texas and Louisiana facilities. Among the hundreds of shipments listed in exhibit 2 are three outbound MMP shipments from Taft, Louisiana to Chocolate Bayou, Texas. These shipments were described as "Taft outbound liquid chemicals."

Exhibit 9 of the contract is entitled "Service Standards." Under the subheading "INTENT," exhibit 9 provides:

Whereas both *Parties* recognize that safe and reliable inbound and outbound transportation service by [Union Pacific] at North Seadrift, Star and Taft affects the ability of [Carbide] to be a quality supplier, *they agree to establish service requirements to ensure quality service.* The number of shipments shall include shipments to storage-in-transit points as one shipment, and subsequent shipment from the transit point to the final destination as an additional shipment. *These requirements promote and encourage the continuous improvement of both Parties.*

(Emphasis added). Exhibit 9 lists 12 service requirements, three of which include the following:

- [Union Pacific] transports the right car to the right location on time.
- [Union Pacific] is responsive to the special needs of [Carbide] customers whenever possible.
- [Union Pacific] and [Carbide] effectively communicate with each other.

Based solely on the aforementioned provisions, the trial court found that Novus was a third-party beneficiary of the rail contract. Novus relies on the same provisions in contending that the rail contract's "extraordinary language" supports the trial court's finding. We disagree.

■■■■■ After reviewing the rail contract, we cannot conclude that the contract "fully and clearly spells out" an intent on behalf of Union Pacific and Carbide to confer a direct benefit upon Novus. *See MCI Telecomms.*, 995 S.W.2d at 651; *Whitten*, 56 S.W.3d at 311. Novus is never named in the contract, and all of the obligations flow between Union Pacific and Carbide.[1] Even the service-standards pro-

---

1. Although not determinative of the issue, whether a third party is named in the contract is language to consider when deciding if the third party is an intended beneficiary of the contract. *See Young Ref. Corp. v. Pennzoil Co.*, 46 S.W.3d 380, 387 (Tex.App.-Houston

vision of exhibit 9, on which Novus relies, states, "These requirements promote and encourage the continuous improvement of both *Parties.*" (Emphasis added). Nowhere in the rail contract is it stated that the parties are contracting for the benefit of Carbide's *customers.* Because Novus relies on implication to argue otherwise, its third-party beneficiary claim necessarily fails. *See MCI Telecomms.*, 995 S.W.2d at 651.

Any benefit received by Novus was incidental. If Union Pacific had satisfied the transportation duties that it owed to Carbide, then Novus would have been assured a steady supply of MMP. But the fact that Novus had a substantial interest in the enforcement of the rail contract does not grant Novus the right to enforce it. *See Merrimack Mut. Fire Ins. Co. v. Allied Fairbanks Bank,* 678 S.W.2d 574, 577 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.). If we were to adopt Novus's interpretation of the rail contract, then Union Pacific would potentially be liable to every Carbide customer to which Union Pacific transported chemicals or supplies. Absent clear contractual language to the contrary, it is illogical to think that Union Pacific entered the rail contract intending to expose itself to such expansive liability.[2] *See Whitten,* 56 S.W.3d at 311 (third-party

recovery allowed only if primary parties contemplated that third party would be vested with the right to sue).

There exists a strong presumption against third-party-beneficiary recovery. *MCI Telecomms.*, 995 S.W.2d at 651; *Whitten,* 56 S.W.3d at 311. Because the rail contract did not "fully and clearly spell out" that Novus was an intended third-party beneficiary, Novus was instead an incidental beneficiary without standing to sue. *See Young Ref.,* 46 S.W.3d at 387. Accordingly, we hold that the trial court erred in granting Novus's motion for partial summary judgment, in denying Union Pacific's motion for summary judgment, and in allowing Novus, as a third-party beneficiary of the rail contract, to sue Union Pacific.

We sustain Union Pacific's first issue. As a result of our holding, we need not address Union Pacific's remaining issues.

### Conclusion

 We reverse the judgment of the trial court and render judgment that Novus take nothing.[3]

[1st Dist.] 2001, pet. denied) (noting third party not named in the contract); *Fleetwood Ent., Inc. v. Gaskamp,* 280 F.3d 1069, 1076 (5th Cir.2002) (same); *Missouri Pac. RR. Co. v. Harbison–Fischer Man. Co.,* 26 F.3d 531, 540 (5th Cir.1994) (same). Novus argues that it is identified in the contract because the contract lists three outbound MMP shipments to Chocolate Bayou, Texas. According to Novus, "Chocolate Bayou" is synonymous with "Novus" because Chocolate Bayou is the location at which Novus produces Alimet. This argument, however, relies on implication and is therefore attenuated. A third party's beneficiary status must "clearly appear" from the contract being sued upon, and we will not create a third-party-beneficiary contract through implication. *MCI Telecomms. Corp.*

*v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 651 (Tex.1999).

2.  In support of expansive liability, Novus relies on *Brunswick Corp. v. Bush,* 829 S.W.2d 352, 356 (Tex.App.-Fort Worth 1992, no writ). However, the *Brunswick* court expressly refused to allow third-party recovery to an expansive class of "shareholders" when the contract at issue contemplated third-party recovery only on behalf of seven majority shareholders. *Id.* We agree with the *Brunswick* decision and find it supportive of our holding.

3.  Novus alternatively argues that we should remand the issue to the trial court "due to the existence of a material fact and/or ambiguity"

in the rail contract. An ambiguity, however, does not arise merely because the parties advance conflicting contract interpretations. *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex.1997). Only when, after applying the applicable rules of construction, we conclude that the contract contains terms susceptible of two or more reasonable interpretations will we hold that the contract is ambiguous. *See Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 465 (Tex. 1998). Because we do not find that the rail contract is ambiguous, and because the contract contains an integration clause that states, "This contract constitutes the entire understanding and agreement between the Parties," parol evidence may not be considered. *See Smith v. Smith*, 794 S.W.2d 823, 828 (Tex.App.-Dallas 1990, no writ). Thus, our construction of the rail contract is purely a question of law, and we need not remand the cause. *MCI Telecomms.*, 995 S.W.2d at 650.