**Opinion issued March 3, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00621-CV

———————————

**ANGELICA GARZA DUQUE, Appellant**

**V.**

**WELLS FARGO, N.A., Appellee**

---

**On Appeal from the 400th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 12-DCV-199193**

---

## O P I N I O N

Angelica Garza Duque sued Wells Fargo, N.A., seeking to enforce a consent judgment to which she is not a party and prevent foreclosure on her home. The parties each filed a traditional motion for summary judgment. The trial court granted Wells Fargo's motion and denied Duque's motion. Duque appeals. We

hold that Duque lacks standing to enforce the consent judgment and affirm the judgment of the trial court.

## Background

Duque purchased a home in 2006. To do so, she obtained a mortgage loan from World Savings Bank, FSB, and executed a promissory note and deed of trust granting World Savings Bank a security interest in the home. Duque defaulted on the mortgage in 2009. Wells Fargo, which by then had become the successor of World Savings Bank, notified Duque of her default and demanded that she cure.

Duque sued Wells Fargo, alleging fraud, negligent misrepresentation, breach of fiduciary duty, wrongful foreclosure, and slander of title. After Wells Fargo foreclosed, Duque amended her petition to request a declaration that the foreclosure sale was improper and an injunction prohibiting her eviction. Alternatively, she sought actual damages, including damages for loss of the property and mental anguish.

Duque moved for partial summary judgment on the theory that she was entitled to rescind the foreclosure and Wells Fargo's sale of her home because Wells Fargo violated the consent judgment in *U.S. v. Bank of Am. Corp.*, No. 1:12-CV-00361-RMC (D.D.C. Apr. 4, 2012) (Dkt. No. 14), an action brought by the United States and forty-nine States against Wells Fargo and other national banks. The consent judgment entered by the United States District Court for the District of

Columbia requires Wells Fargo to pay various amounts into a variety of escrow funds to resolve then-existing disputes with mortgage borrowers, give relief totaling $3,434,000,000 to borrowers meeting certain financial-eligibility requirements, give refinancing relief totaling $903,000,000 to customers meeting other requirements, and meet various standards regarding processing of loan paperwork, foreclosures, and other transactions.

In her filings below and on appeal, Duque identifies two portions of the consent judgment as particularly relevant to her claims. First, Exhibit A to the consent judgment, captioned "Settlement Term Sheet," contains provisions governing the sale or transfer of loans from one servicer to another. Among other requirements, any contract for such a transfer or sale "shall designate that borrowers are third party beneficiaries under paragraphs IV.M.1.b and IV.M.1.c" of Exhibit A. Paragraph IV.M.1.b states that a contract for sale or transfer must obligate the successor servicer to accept and continue processing pending loan modification requests. Paragraph IV.M.1.c, in turn, states that a contract for sale or transfer must obligate the successor servicer to honor any trial or permanent loan modification agreements entered into by the prior servicer.

Second, Duque points to Exhibit G to the consent judgment, captioned "State Release." That exhibit explicitly excludes from the claims released by the state governments "[c]laims and defenses asserted by third parties, including

3

individual mortgage loan borrowers on an individual or class basis," as well as claims for injunctive or declaratory relief flowing from conduct covered by the consent judgment.

The consent judgment explicitly provides for and limits its own enforcement, subjecting Wells Fargo to periodic reporting, sampling of transactions, and monitoring of compliance. The bank's incorrect servicing of a single mortgage does not give rise to an actionable violation of the consent judgment. Rather, the bank commits a "Potential Violation" only if periodic sampling of multiple loans shows that the bank has exceeded a "Threshold Error Rate" for one or more of several defined metrics. Only if a Potential Violation remains uncured do the parties to the consent judgment, the monitor designated pursuant to the consent judgment, or the monitoring committee have any remedies under the judgment. The consent judgment expressly provides for enforcement by parties to the consent judgment, by the monitor, or by the monitoring committee.

Wells Fargo responded to Duque's motion for summary judgment and filed a cross-motion for summary judgment, arguing that Duque lacked standing to enforce the consent judgment and that Duque's remaining claims were time-barred.

The trial court held an oral hearing at which Duque abandoned all of her claims that do not depend on alleged violations of the consent judgment. The trial court then granted Wells Fargo's motion and denied Duque's motion.

Duque challenges the summary judgment on appeal. She argues that, as a mortgage borrower, she is an entitled to enforce the consent judgment either as an explicit or implicit third-party beneficiary of the consent judgment.

## Discussion

### A. Standard of Review

We review a trial court's decision to grant or to deny a motion for summary judgment de novo. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n*, 253 S.W.3d 184, 192 (Tex. 2007). "When both sides move for summary judgment, as they did here, and the trial court grants one motion and denies the other, reviewing courts consider both sides' summary-judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered." *Gilbert Tex. Constr., Inc. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010) (citing *Embrey v. Royal Ins. Co. of Am.*, 22 S.W.3d 414, 415–16 (Tex. 2000)). When a trial court grants summary judgment to a defendant and the plaintiff appeals, the plaintiff abandons any claims that she does not brief on appeal, and we will review the summary judgment only with respect to those claims that she asserts in her brief. *See*, *e.g.*, *Pat Baker Co., Inc. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998); *Vawter v. Garvey*, 786 S.W.2d 263, 264 (Tex. 1990); *Allright, Inc. v. Pearson*, 735 S.W.2d 240, 240 (Tex. 1987).

## B. Applicable Law

The National Mortgage Settlement, a series of consent judgments between governments and national banks, including the one at issue, spawned a wave of claims by homeowners facing foreclosure and seeking to enforce the component judgments. The many courts that have considered homeowner claims based on the National Mortgage Settlement—including federal courts resolving disputes from Texas—have universally rejected them, primarily on grounds that the homeowners lacked standing to enforce the consent judgment.[1] For the reasons that follow, we reach the same conclusion.

"Standing is a constitutional prerequisite to suit." *City of Houston v. Williams*, 353 S.W.3d 128, 145 (Tex. 2011) (citing *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex. 2001)). "Whether a party has standing to maintain a suit is a question of law, which we review de novo." *Hobbs v. Van Stavern*, 249 S.W.3d 1,

---

[1] *See*, *e.g.*, *Shatteen v. JP Morgan Chase Bank, N.A.*, 519 F. App'x 320, 321 (5th Cir. May 15, 2013) (unpublished) (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750, 95 S. Ct. 1917, 1932 (1975)) (borrower lacked standing to enforce National Mortgage Settlement consent judgment); *Johnson v. Wells Fargo Bank, N.A.*, No. 3:13–CV–1793–M–BN, 2014 WL 2593616, at *5 (N.D. Tex. June 9, 2014) (same); *Lombardi v. Bank of Am.*, No. 3:13–CV–1464–O, 2014 WL 988541, at *15 & n.13 (N.D. Tex. Mar. 13, 2014) (slip op.) (same, applying Texas law); *Phillips v. JPMorgan Chase Bank, N.A.*, No. A–14–CA–054–SS, 2014 WL 850721, at *2 (W.D. Tex. Mar. 4, 2014) (slip op.) (same holding); *Pachecano v. JPMorgan Chase Bank N.A.*, No. SA–11–CV–00805–DAE, 2013 WL 4520530, at *13–14 (W.D. Tex. Aug. 26, 2013) (same); *Choe v. Bank of Am., N.A.*, No. 3:13–CV–0120–D, 2013 WL 3196571, at *4–5 (N.D. Tex. June 25, 2013) (same); *Reynolds v. Bank of Am., N.A.*, No. 3:12–CV–1420–L, 2013 WL 1904090, at *10 (N.D. Tex. May 8, 2013) (same); *Daniels v. JPMorgan Chase, N.A.*, No. 4:11–CV–616, 2011 WL 7040036, at *3 (E.D. Tex. Dec. 14, 2011) (same).

3 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (citing *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004)). The absence of subject-matter jurisdiction may be raised by a traditional motion for summary judgment. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Green Tree Servicing, LLC v. Woods*, 388 S.W.3d 785, 793 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

In general, federal law presumes that third parties do not have standing to enforce federal consent judgments. A well-settled line of United States Supreme Court authority establishes that "a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750, 95 S. Ct. 1917, 1932 (1975) (citing *United States v. Armour & Co.*, 402 U.S. 673, 91 S. Ct. 1752 (1971), and *Buckeye Coal & R. Co. v. Hocking Valley Co.*, 269 U.S. 42, 46 S. Ct. 61 (1925)). Some federal circuit courts have interpreted this "seemingly sweeping prohibition" on suits by non-parties to a consent decree as meaning merely that incidental third-party beneficiaries may not enforce a consent decree. *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 288 (D.C. Cir. 1993); *see also Hook v. Ariz. Dep't of Corr.*, 972 F.2d 1012, 1015 (9th Cir. 1992); *Berger v. Heckler*, 771 F.2d 1556, 1565 (2d Cir. 1985). State courts generally "may not decline to recognize or enforce federal law." *The Chair King,*

*Inc. v. GTE Mobilnet of Houston, Inc.*, 184 S.W.3d 707, 712 (Tex. 2006) (citing

*Howlett v. Rose*, 496 U.S. 356, 371, 110 S. Ct. 2430 (1990)). Moreover, principles

of comity would ordinarily counsel that state courts should not apply a federal

consent judgment in a way that would be prohibited in federal courts. *Cf. Keene

Corp. v. Caldwell*, 840 S.W.2d 715, 720 (Tex. App.—Houston [14th Dist.] 1992,

no writ).

More generally speaking, "a third party cannot enforce a contract if the third

party benefits only incidentally from it." *Williams*, 353 S.W.3d at 145. Texas law

recognizes a presumption against third-party enforcement of consent judgments

such as the one before us: "[T]here is a presumption against conferring third-

party-beneficiary status on noncontracting parties." *S. Texas Water Auth. v.

Lomas*, 223 S.W.3d 304, 306 (Tex. 2007) (per curiam). "In deciding whether a

third party may enforce or challenge a contract between others, it is the contracting

parties' intent that controls." *Id.* "Incidental benefits that may flow from a

contract to a third party do not confer the right to enforce the contract." *Id.*; *see

also Union Pac. R.R. Co. v. Novus Int'l, Inc.*, 113 S.W.3d 418, 421 (Tex. App.—

Houston [1st Dist.] 2003, pet. denied). "A third party may only enforce a contract

when the contracting parties themselves intend to secure some benefit for the third

party and entered into the contract *directly* for the third party's benefit." *Lomas*,

223 S.W.3d at 306 (emphasis added); *see also MCI Telecomms. Corp. v. Tex.*

8

*Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999); *Novus Int'l*, 113 S.W.3d at 421. "A court will not create a third-party beneficiary contract by implication." *MCI Telecomms. Corp.*, 995 S.W.2d at 651; *Novus Int'l*, 113 S.W.3d at 422. Rather, "[t]he intention to contract or confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied." *MCI Telecomms.*, 995 S.W.2d at 651; *Novus Int'l*, 113 S.W.3d at 422. "[G]eneral beneficence does not create third-party rights, else every Texan could challenge or seek to enforce any government contract and the presumption against third-party-beneficiary agreements would disappear." *Lomas*, 223 S.W.3d at 307.

Subject to these guidelines, "[a]n agreed judgment should be construed in the same manner as a contract." *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 422 (Tex. 2000); *see also Hydroscience Techs., Inc. v. Hydroscience, Inc.*, 401 S.W.3d 783, 798 (Tex. App.—Dallas 2013, pet. denied) ("An agreed judgment must be interpreted as if it were a contract *between the parties*, and the interpretation of the judgment is governed by the laws relating to contracts." (emphasis added)); *Chapman v. Abbot*, 251 S.W.3d 612, 616 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (agreed judgments subject to "the usual rules of contract interpretation"). The interpretation of an unambiguous consent judgment, like the interpretation of an unambiguous contract, is therefore a matter of law for the Court. *Gulf Ins.*, 22 S.W.3d at 422; *Hydroscience Techs.*, 401 S.W.3d at 798; *see*

*also Coker v. Coker*, 650 S.W.2d 391, 393–94 (Tex. 1983). "Thus, the court will examine and consider the entire instrument so that none of the provisions will be rendered meaningless." *Gulf Ins.*, 22 S.W.3d at 422; *see also Coker*, 650 S.W.2d at 393; *Chapman*, 251 S.W.3d at 616.

## C.     Explicit Third-Party Beneficiary Status

Despite not being a party to the consent judgment, Duque claims that it explicitly permits her to bring an action to enforce it. Exhibit A to the consent judgment, the "Settlement Term Sheet," states: "[a]ny contract for transfer or sale of servicing rights shall designate that borrowers are third party beneficiaries under paragraphs IV.M.1.b and IV.M.1.c [of Exhibit A to the consent judgment]." As discussed above, those paragraphs impose requirements on successor servicers pursuant to a contract for sale or transfer of a loan, requiring them to honor applications for loan modifications and trial or permanent loan modification agreements. According to Duque, this language applies to her and makes her and borrowers like her explicit third-party beneficiaries of the consent judgment itself.

Requiring that borrowers such as Duque be made third-party beneficiaries of any future contract for the sale or transfer of a loan does not make such borrowers third-party beneficiaries of the consent judgment itself. *See MCI Telecomms.*, 995 S.W.2d at 652 ("Absent clear indication in the contract that [the parties] intended to confer a *direct* benefit to [the plaintiff], [the plaintiff] may not maintain an

action as a third-party beneficiary." (emphasis added)); *Lomas*, 223 S.W.3d at 306 (because benefit must be direct, contract specifying that water would be used for sale to municipal and industrial customers did not make customers third-party beneficiaries); *see also Alvarado v. Lexington Ins. Co.*, 389 S.W.3d 544, 555 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (even when homeowner directly makes payment of force-placed insurance policy premiums, homeowner may not enforce policy unless it confers direct benefit on homeowner).

As the Supreme Court of the United States explained in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S. Ct. 1917 (1975), one may be an intended beneficiary of a consent judgment but nonetheless lack any right to enforce it. 421 U.S. at 750, 95 S. Ct. at 1932. In that case, the offerees of a stock offering made pursuant to an antitrust consent decree sought damages for the offeror's alleged violations of a Securities and Exchange Commission rule. 421 U.S. at 725, 95 S. Ct. at 1920. The offerees had not purchased or sold any of the offered shares. *Id.* The court of appeals nonetheless held that, because the offering was made pursuant to a consent judgment, the consent judgment served the same purpose as a contractual relationship in defining the potential class of plaintiffs, which would include the offerees. 421 U.S. at 749–50, 95 S. Ct. at 1932. The Supreme Court rejected this logic and reversed, explaining that the offerees, who did not have standing to sue under the Securities Act of 1933 or a direct contractual relationship

11

with the offeror, could not sue on the basis of the consent judgment. 421 U.S. at 754–55, 95 S. Ct. at 1934–35. The same logic applies here. Although the consent judgment unquestionably results in indirect benefits to borrowers like Duque, it does not give them any private remedies.

This case stands in contrast to *City of Houston v. Williams*, 353 S.W.3d 128 (Tex. 2011). In that case, the Supreme Court of Texas found that individual firefighters had standing to enforce a pair of meet-and-confer agreements and a collective-bargaining agreement between the City of Houston and the Houston Professional Fire Fighters Association. 353 S.W.3d at 145–49. The Association had negotiated on behalf of the firefighters in a representative capacity. *Id.* at 146. Accordingly, the meet-and-confer agreements conferred a variety of direct benefits on individual firefighters, providing for certain wages, hours, conditions of employment, salary and termination payments, overtime pay, and vacation leave. *Id.* The Court explained, "These benefits are not offered to the world at large as a general beneficence, but are limited to the Firefighters through the definition of 'employee' included in the agreements." *Id.* It continued, "These guarantees of compensation are not promised to the City or to the [Association], but to the Firefighters." *Id.* The collective-bargaining agreement made similar promises directly to the firefighters. *Id.* at 148. The Court therefore held that the firefighters had standing to sue under those agreements. *Id.* at 146, 148–49.

By contrast, the consent judgment does not promise direct benefits to any homeowners or borrowers. While it provides for certain forms of relief that Wells Fargo must make available to homeowners or borrowers generally and requires Wells Fargo to impose certain terms preserving the rights of homeowners and borrowers in future contracts with third parties, it does not promise any direct benefits which an individual homeowner or borrower may claim. Unlike the firefighters in *Williams* who directly and individually benefitted from their union's agreements with the city, homeowners who borrow from Wells Fargo benefit only indirectly from the consent judgment. And nearly all of the indirect benefits to such borrowers are collective, rather than individual. Duque's status under the consent judgment thus bears much more resemblance to that of the would-be shareholders in *Blue Chip Stamps* than to that of the firefighters in *Williams*.

Duque also argues that Exhibit G to the consent judgment gives her standing to enforce the consent judgment. Duque reasoned that Exhibit G, captioned "State Release," explicitly excludes from the claims released by the state governments "[c]laims and defenses asserted by third parties, including individual mortgage loan borrowers on an individual or class basis," as well as claims for injunctive or declaratory relief flowing from conduct covered by the consent judgment. This, she claims, indicates that the parties to the consent judgment intended that mortgage borrowers would have the right to enforce the consent judgment. But

13

Exhibit G states merely that such claims "are hereby not released and are specifically reserved." That the consent judgment does not release Duque's claims does not imply that it gives her a right to enforce the consent judgment itself. *See*, *e.g.*, *Resolution Trust Corp. v. Kemp*, 951 F.2d 657, 663 (5th Cir. 1992) (when parties to agreement did not intend to benefit non-party, non-party could not enforce release provisions of agreement); *Derr Constr. Co. v. City of Houston*, 846 S.W.2d 854, 858 (Tex. App.—Houston [14th Dist.] 1992, no writ) (releases suppress causes of action, as opposed to creating them).

We hold that the consent judgment does not explicitly confer upon Duque standing to bring her claims.

**D.    Intended Third-Party Beneficiary Status**

Alternatively, Duque argues that, even if she is not an explicit third-party beneficiary of the consent judgment, she is an intended third-party beneficiary of it. Duque relies on *Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894 (Tex. 2011), which she argues stands for the proposition that a contract intended to benefit borrowers confers upon those borrowers standing to enforce the agreement. *Basic Capital* involved a commitment between private parties to lend money to certain special-purpose entities that had not yet been created. 348 S.W.3d at 900–01. The Supreme Court of Texas reasoned the parties that would own such special-purpose entities could sue to enforce the agreement

14

without creating an entity solely to bring a claim for breach of contract. *Id.* at 901. The parties who brought the suit—the would-be parent companies of the special-purpose entities—were not themselves borrowers, but the entire purpose of the agreement was to benefit the parent companies by providing funding for their activities. *Id.* at 900–01.

By contrast, the National Mortgage Settlement arose out of a suit by governmental entities seeking to ensure stable financial and housing markets and to protect the validity and application of their respective laws. *See*, *e.g.*, *Bell v. Countrywide Bank, N.A.*, No. 2:11-CV-00271-BSJ, 2012 WL 3073108, at \*3 (D. Utah July 26, 2012) (explaining rationale for intervention by State of Utah in suit by borrower seeking to enforce consent judgment arising from National Mortgage Settlement). Such an outcome no doubt benefits the general public, including homeowners and borrowers affected by the conduct of banking activities, but that does not mean that the consent judgment lacked any other purpose whatsoever. On the contrary, any benefits to homeowners and borrowers that flow from the consent judgment are indirect. Thus, homeowners and borrowers like Duque are incidental beneficiaries of the consent judgment. But incidental beneficiaries are not entitled to enforce a consent judgment. *See Blue Chip Stamps*, 421 U.S. at 750, 95 S. Ct. at 1932; *Lomas*, 223 S.W.3d at 306; *Novus Int'l, Inc.*, 113 S.W.3d at 421.

Moreover, we note the consent judgment's explicit provisions governing its own enforcement. It expressly provides for enforcement by parties to the consent judgment, by the monitor, or by the monitoring committee. Under the maxim *expressio unius est exclusio alterius*, parties not listed—including borrowers such as Duque—lack standing to enforce the consent judgment. *See CKB & Assocs., Inc. v. Moore McCormack Petroleum, Inc.*, 734 S.W.2d 653, 655 (Tex. 1987) (explaining maxim and applying it to settlement agreement); *see also*, *e.g.*, *Fleshman v. Wells Fargo Bank, N.A.*, 27 F. Supp. 2d 1127, 1135–36 (D. Ore. June 17, 2014) (applying same concept to consent judgment at issue here); *JP Morgan Chase Bank, N.A. v. Ackley*, 834 N.W.2d 82, No. 12–1338, 2013 WL 1749783, at *2 (Iowa Ct. App. Apr. 24, 2013) (applying concept to another National Mortgage Settlement consent judgment); *Rehbein v. CitiMortgage, Inc.*, 937 F. Supp. 2d 753, 762 (E.D. Va. 2013) (same). The maxim has particular force when a third party seeks to enforce an agreement because we cannot "create a third-party beneficiary contract by implication;" rather, the agreement must "clearly and fully spell[] out" the intention to confer a direct benefit on the third party seeking to enforce it. *MCI Telecomms. Corp.*, 995 S.W.2d at 651; *see also Novus Int'l*, 113 S.W.3d at 422.

We hold that Duque was not an intended third-party beneficiary of the consent judgment, but was a mere incidental beneficiary, and thus cannot enforce

16

the consent judgment. *See Blue Chip Stamps*, 421 U.S. at 750, 95 S. Ct. at 1932; *Williams*, 353 S.W.3d at 145.

Because Duque lacked standing to enforce the consent judgment, Wells Fargo was entitled to traditional summary judgment on Duque's claims based on that document. *See Bland Indep. Sch. Dist.*, 34 S.W.3d at 554 (traditional motion for summary judgment is proper vehicle for asserting lack of standing); *Green Tree Servicing*, 388 S.W.3d at 793 (same). Wells Fargo's motion for summary judgment also addressed Duque's remaining claims, which she conceded were time-barred at the hearing on the motion; her appeal does not challenge the trial court's judgment on those claims. We therefore hold that the trial court did not err in granting summary judgment in favor of Wells Fargo.

## Conclusion

The evidence conclusively demonstrates that Duque lacks standing to assert claims based on Wells Fargo's purported violation of the consent judgment. The trial court therefore properly granted Wells Fargo's traditional motion for summary judgment. We affirm the judgment of the trial court.


Rebeca Huddle
Justice

Panel consists of Justices Massengale, Brown, and Huddle.

17